UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Christina Littler,**

    **Plaintiff,**  :  **Case No. 2:18-cv-1745**

    **v.**  **Judge Sarah D. Morrison**
    **Magistrate Judge Chelsey M. Vascura**

**Ohio Association of Public School Employees,**  :

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on the parties' cross-Motions for Summary Judgment. (ECF Nos. 50, 51.) The parties have filed their Responses (ECF Nos. 53, 54) and Replies (ECF Nos. 56, 57), and the Motions are now ripe for consideration.

**I.  BACKGROUND**

In 2011, Plaintiff Christina Littler began working for the South-Western City School District ("SWCSD") as a substitute bus driver. (Christina Littler Dep. 8:16–14, ECF No. 37-1.) Ms. Littler initially did not join the bus driver union, the Ohio Association of Public School Employees ("OAPSE"), because she thought that substitute drivers were not permitted to do so. (*Id.* 64:19–22, 66:15–67:20.) Because she was not a union member, Ms. Littler paid reduced agency fees to the union rather than full dues, as then required by the OAPSE collective bargaining agreement ("CBA"). (*Id.* 64:19–22; ECF No. 50-1, at 17–18; Gary Martin Dep. 12:12–18, 33:1–13, ECF No. 37-6.)

On January 16, 2015, Ms. Littler opted to join OAPSE and signed an OAPSE membership card (the "Membership Card"). (Littler Dep. 50:4–16.) Ms. Littler's explanation for signing the Membership Card has been inconsistent. She testified that she thought she was

1

required to join the union when she became a full-time employee. (*Id.* 66:1–4, 67:21–68:2.) She has also attested that she chose to join the union, if "reluctantly," because the cost of full union membership, as compared to the cost of the agency fee, was not worth the loss of her vote and influence in union matters. (Christina Littler Decl. ¶ 6, ECF No. 52 ("Littler Decl. 1").) Regardless of her primary motivation for joining the union, Ms. Littler acknowledges that she knew that union membership was necessary for her to be able to vote on union matters, including the CBA. (Christina Littler Decl. ¶ 5, ECF No. 56-1 ("Littler Decl. 2").)

> When she signed the Membership Card, Ms. Littler agreed to the following statement:
>
> I hereby authorize [OAPSE] as bargaining agent on matters . . . that may affect my employment. I further authorize and direct [SWCSD] to deduct OAPSE State dues and Local dues as set forth herein or as increased from my salary or wages and remit the same to the OAPSE State Treasurer. This authorization shall remain in effect during my employment unless withdrawn by me in the manner provided in the [CBA] between [SWCSD] and OAPSE or, where there is no provision for withdrawal in the [CBA], only during a 10 day period from August 22 through August 31. I agree that any withdrawal of dues deduction authorization shall be in writing, executed and delivered during the revocation period by written notice served upon the Chief Fiscal Officer of [SWCSD] and the OAPSE State Treasurer. I further agree that dues deduction may not be revoked at any other time or in any other manner except as provided herein.

(ECF No. 37-1, at 130.) The CBA contains no provision for withdrawal, (*see* ECF No. 50-1), so all agree that the withdrawal procedure outlined on the Membership Card controls.

On June 27, 2018, the Supreme Court voided mandatory agency fee provisions like the one in the OAPSE CBA. *See Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2460 (2018). In response, OAPSE stopped collecting agency fees. (*See* Martin Dep. 12:16–18.)

On August 22, 2018, Ms. Littler sent an email to Gary Martin, the Director of Membership Services for OAPSE, and Hugh Garside, the Treasurer and Chief Fiscal Officer for SWCSD, notifying OAPSE of her desire to withdraw her dues deduction authorization (the

2

"August Email"). (Littler Decl. 1 ¶ 8; ECF No. 52-1.) Over the next week, Chad Caldwell, an OAPSE representative, called Ms. Littler and left her several voicemails. (Littler Dep. 74:20–75:11; Littler Decl. 1 ¶ 12.) In these voicemails, Mr. Caldwell advised Ms. Littler that her withdrawal request was not being accepted because she had not signed her request with a handwritten signature. (Littler Dep. 77:22–78:8.) On August 28, 2018, Ms. Littler sent an email to Mr. Martin and Mr. Garside requesting that Mr. Caldwell stop calling her. (ECF No. 52-4.) Ms. Littler identifies no other actions that she took after sending this email. OAPSE did not consider Ms. Littler's withdrawal request to be valid because it lacked a handwritten signature. (Gary Martin Decl. ¶ 13, ECF No. 50-5.)

Because OAPSE refused to honor Ms. Littler's withdrawal request, dues continued to be deducted from her paycheck beginning in November 2018.[1] (Littler Decl. 1 ¶ 16.) In February 2019, OAPSE decided to accept member withdrawal requests via email even if they did not contain a handwritten signature. (Martin Decl. ¶ 9.) OAPSE also decided to honor retroactively the requests from the 2018 withdrawal period that complied with this revised policy. (*Id.* ¶ 10.) Accordingly, on February 19, 2019, OAPSE notified Ms. Littler that it would honor the withdrawal request in her August Email and sent her a check for all dues that had been deducted from her paycheck since August 2018, plus interest. (*Id.* ¶ 14; *id.* Ex. A.) OAPSE also notified SWCSD to cease deducting dues from Ms. Littler's paychecks. (*Id.* Ex. B.) Ms. Littler has not cashed the check refunding her dues. (Littler Dep. 89:4–5.)

On December 19, 2018, Ms. Littler sued OAPSE.[2] (Compl., ECF No. 1.) She later filed a substantively identical Amended Complaint in which she brought three claims against OAPSE

---

[1] Section 501.4 of the CBA outlines that OAPSE dues are only deducted from November through June. (ECF No. 50-1 at 18.)

[2] Ms. Littler also sued SWCSD but subsequently agreed to its dismissal from the case. (ECF No. 30.)

3

for previously requiring Ohio public school employees to either join the union or pay agency fees (Claim One), for continuing to deduct union dues post *Janus* (Claim Two), and deducting union dues without securing "freely given consent" (Claim Three). (Amended Compl., ECF No. 27.) Ms. Littler's three claims are organized thematically, and each encompasses multiple causes of action, including 42 U.S.C. § 1983, the Declaratory Judgment Act, and various state law causes of action relating to the "unlawful seizure of her personal property." (*Id.* ¶¶ 48–49.) In addition to costs and attorney's fees, Ms. Littler seeks compensatory damages (i.e., a refund of all agency fees that she previously paid and a refund of all dues paid after her August Email) and various forms of declaratory and injunctive relief relating to how OAPSE has deducted dues from its members. (*Id.* ¶¶ 50–52.) She also seeks punitive damages on Claim Two as a result of OAPSE's continued deduction of union dues after receiving her August Email. (*Id.* ¶ 51(h).)

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The burden then shifts to the nonmoving party to "'set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "summary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

### III.   ANALYSIS

Claim One, Ms. Littler's claim for compensation for past agency fees, is no longer contested. Ms. Littler acknowledges that this claim is foreclosed by recent Sixth Circuit precedent. (Pl. Mot. for Summ. J., ECF No. 51, at 1 n.1 (citing *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386 (6th Cir. 2020)).) While Ms. Littler has preserved her claim for appeal, all agree that *Lee* controls. *See* 951 F.3d at 388 (holding that good faith defense barred claim for refund of agency fees). OAPSE's Motion for Summary Judgment on this claim is **GRANTED**.

Ms. Littler offers five reasons why she believes she is entitled to summary judgment on her second and third claims: 1) the Membership Card is not a valid contract, 2) her August Email resigned her union membership in compliance with the withdrawal terms outlined by the Membership Card, 3) the Membership Card is not a valid waiver of constitutional rights under *Janus*, 4) employees may unilaterally rescind maintenance-of-dues agreements after agency fees are no longer required, and 5) OAPSE was not entitled to condition membership on the surrendering of constitutional rights. (ECF No. 51, at 11–18.) For its part, OAPSE offers three primary reasons why it believes it is entitled to summary judgment: 1) Ms. Littler's claims are

5

moot, 2) Ms. Littler validly consented to the withdrawal of her dues, and 3) OAPSE did not engage in state action. (Def. Mot. for Summ. J., at 6–17, ECF No. 50.)

The Court first addresses OAPSE's mootness argument because this Court lacks jurisdiction to decide the merits if there no longer remains an ongoing case or controversy. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). Next, the Court addresses Ms. Littler's first two arguments, that the Membership Card is not a valid contract and that she validly resigned her union membership. Finally, the Court addresses whether Ms. Littler validly consented to the withdrawal of her dues. Because the Court concludes that she did, it is unnecessary to address OAPSE's third argument, that it did not engage in state action. It is also unnecessary to address Ms. Littler's fourth and fifth arguments, neither of which finds support in controlling law.

**A.    Mootness**

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). But a case is moot "only if 'it is impossible for a court to grant *any effectual relief whatever*'" to the prevailing party. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) (emphasis added) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

As OAPSE acknowledges, Ms. Littler's request for punitive damages on Claim Two is not moot. (Def. Resp. to Pl. Mot. for Summ. J., at 5–6, ECF No. 53.) OAPSE contends that Ms. Littler has a weak case for punitive damages, but Ms. Littler is correct that this is a merits argument, not a mootness argument. Regardless of whether some of Ms. Littler's *remedies* have been mooted, *the case itself* is not moot. It remains possible for the Court to grant Ms. Littler

punitive damages and thus to grant her some form of relief. That is enough to avoid a mootness determination, and the Court must evaluate Ms. Littler's claims on the merits.

        **B.**        **The Membership Card is a Contract from which Ms. Littler Did Not Validly Withdraw**

Ms. Littler makes two arguments as to why the terms of the Membership Card cannot bind her, first that the Membership Card was never a valid contract and second that even if it is a valid contract, she is no longer subject to it because she complied with its withdrawal terms. Beginning with the first, Ms. Littler claims that the Membership Card is not a valid contract because it does not "describe" anything that she received in exchange for her promise to pay dues. (ECF No. 51, at 11.) That is, she argues that it lacked consideration and is unenforceable. Her argument relies on the false premise that all terms of a written contract must be stated in the writing itself. A contract can be partially integrated, meaning that it is "only one portion of a larger agreement . . . ." *McGonagle v. Somerset Gas Transmission Co.*, No. 11AP-156, 2011 WL 5353089, at *5 (Ohio Ct. App. Nov. 8, 2011). Under Ohio law, a court looks to the document itself as well as extrinsic evidence to determine whether a written agreement is completely integrated. *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 613 (6th Cir. 2001).

Here, it is clear from the circumstances that the Membership Card is not completely integrated. Ms. Littler herself explains that she joined OAPSE, at least in part, *because of* the benefits that she knew she would receive, such as the ability to have a say in the union's affairs and to vote on the union contract. Regardless of what is written on the Membership Card, there is no doubt that Ms. Littler received some benefit by joining the union. That is persuasive evidence that the Membership Card is not a completely integrated contract. And the benefits that Ms. Littler knew she would receive by signing the Membership Card are sufficient consideration to establish that the Membership Card is a valid contract.

7

Ms. Littler next argues that she is entitled to summary judgment because she complied with the withdrawal terms required by the Membership Card. The Membership Card requires that a written withdrawal notice be "executed and delivered" between August 22 and August 31. The parties quibble over the meaning of the word "executed" and dispute whether Ms. Littler "executed" her August Email in compliance with the terms of the Membership Card. The Court need not decide who is correct, because regardless of whether she "executed" her August Email, Ms. Littler has not met her burden to prove that she complied with another requirement to withdraw from the union. Specifically, the Membership Card also requires that a withdrawal notice be provided to two people, the Chief Fiscal Officer of SWCSD and the OAPSE State Treasurer. Ms. Littler sent her notice to the Chief Fiscal Officer of SWCSD (Hugh Garside), but there is no evidence that she sent her notice to the OAPSE State Treasurer.[3] Because it is Ms. Littler's motion for summary judgment, it is her burden to prove that she complied with the terms of withdrawal as outlined by the Membership Card. She has not met that burden.[4]

### C. Consent to the Withdrawal of Dues

Because Ms. Littler entered into a valid contract when she signed the Membership Card and because she did not withdraw from the union in accordance with the Membership Card's terms, the issue becomes whether she validly consented to have union dues deducted from her paycheck. Before analyzing the validity of Ms. Littler's consent specifically it is important to

---

[3] While Mr. Garside is the Treasurer of SWCSD, if he is also the OAPSE State Treasurer, there is no evidence in the record to support that fact. Similarly, while Ms. Littler also sent her notice to the OAPSE Director of Membership Services, Gary Martin, if Mr. Martin is also the OAPSE State Treasurer, there is no evidence in the record to support that fact either.

[4] OAPSE has not previously objected that Ms. Littler did not send the August Email to the OAPSE State Treasurer. However, this requirement was a condition precedent to performance existing for OAPSE's benefit and thus could be waived by OAPSE in its discretion. *Sharp v. Andisman*, No. 24999, 2010 WL 3676865, at *7 (Ohio Ct. App. Sept. 22, 2010). Ms. Littler presents no evidence that OAPSE waived this condition until its retroactive acceptance of her withdrawal in February 2019. That condition thus still existed at the time of the August Email and throughout the 2018 withdrawal window.

emphasize that although Ms. Littler relies heavily on *Janus* to argue that her consent was not freely given, she is not similarly situated to Mark Janus. "*Janus* analyzed the rights of individuals who *declined* to join a union but were nevertheless required to pay agency fees." *Allen v. Ohio Civil Serv. Emps. Ass'n AFSCME, Local 11*, No. 2:19-cv-3709, 2020 WL 1322051, at *9 (S.D. Ohio Mar. 20, 2020). *Janus* explicitly drew a line between those who agreed to join a union—as Ms. Littler did—and those who did not. *See id.*

In Ms. Littler's case, she voluntarily signed the Membership Card, which "authorize[d] and direct[ed SWCSD] to deduct" her union dues and remit them to OAPSE. (ECF No. 37-1, at 130.) She also agreed that this authorization would remain in effect for the duration of her employment unless she validly withdrew the authorization. As the Court has already concluded, Ms. Littler did not validly withdraw her authorization, and she remained bound by it until OAPSE agreed to accept her withdrawal in February 2019.

Ms. Littler contends that joining OAPSE did not constitute a knowing, intelligent, and voluntary waiver of her First Amendment rights because this waiver was not "freely given." She argues this is the case for two reasons—1) because her alternative was to pay the agency fee and 2) because she was unaware that she "had a constitutional right to withhold payments from the union . . . ." (ECF No. 51, at 13 (emphasis deleted).) These arguments are unavailing.

Turning to Ms. Littler's first argument, it is legally incorrect to say that her decision to join the union was not "freely given" merely because her only other alternative was to pay the agency fee. The fact that she did not like the two choices with which she was presented does not mean that she did not have the opportunity to choose freely between these two available alternatives. *See, e.g.*, *Allen*, 2020 WL 1322051, at *10.

9

When Ms. Littler signed the Membership Card she expressly agreed 1) to join OAPSE, 2) to authorize that union dues be deducted from her pay for remittance to OAPSE, and 3) that she could only withdraw that authorization by abiding by the specific procedure outlined in the Membership Card. Those specifications, combined with the fact that Ms. Littler was free to not join the union, constitute a valid First Amendment waiver. *See id.* While it is true that had she not signed the Membership Card, Ms. Littler would have been required to pay agency fees to OAPSE, she did not have to join the union. Rather, as she has acknowledged in her declarations, Ms. Littler made a free and deliberate choice to opt into the union, pay full dues, and reap all of the benefits of that choice.

Nor does it matter that Ms. Littler was unaware of the specific right that she was giving up by joining the union. "[T]he Constitution does not require that an individual be provided 'with a flow of information to help him calibrate his self-interest in deciding whether to . . . stand by his rights.'" *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 422 (1986)). Rather, in order to validly waive her right not to pay full dues to the union, Ms. Littler need only have been aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421; *cf. Bousley v. United States*, 523 U.S. 614, 619 (1998) (describing cases where guilty pleas were allowed after defendants were informed of the "essential nature" of the charges against them).

Here, Ms. Littler was aware of the nature of the right that she agreed to abandon, the right not to pay full dues to the union. While she claims that she thought that she was obligated to join OAPSE and thus to pay full dues, that self-serving statement is contradicted by the undisputed evidence in the record. In particular, she acknowledges intentionally joining OAPSE because she decided that the benefits of being a member (i.e., having a say in union affairs and being able to

10

vote on the union contract) were worth the dues she would be required to pay. That necessarily means that Ms. Littler was aware of the choice with which she was faced and that she freely chose to join the union, which she admits in her most recent declaration. (Littler Decl. 2 ¶ 5 ("I also understood that union membership was necessary [to] have any voice or vote in collective-bargaining matters, and that I would not be able to vote on our contract unless I joined the union."). No reasonable juror could conclude that Ms. Littler would make such a calculus if she genuinely thought that she had no choice but to join the union. *Cf. Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020) ("[W]here self-serving testimony is blatantly and demonstrably false, it understandably may not create a *genuine* issue of material fact, thereby allowing a court to grant summary judgment."). Similarly, no reasonable juror could conclude that Ms. Littler was not aware that she did not have to join the union and pay union dues.

The Membership Card itself also signaled that union membership was voluntary. That a form was required to "authorize" OAPSE as Ms. Littler's bargaining agent and to "authorize" the deduction of union dues "leads to the obvious conclusion that joining the union [was] optional." *Allen*, 2020 WL 1322051, at *11. An even stronger indicator is the Membership Card's description of the process to *withdraw* this authorization. If union membership were mandatory, withdrawal would not be possible, and this language would be window dressing. The Membership Card would not spend more than half of its word count describing the procedure for withdrawing the authorization if no such withdrawal were possible.

As this Court has previously explained in a factually similar case: "To the extent Plaintiffs' argument relies on the fact that the [Membership Card] does not explicitly say 'You do not have to join the union,' they identify no support for the idea that such talismanic words are constitutionally required." *Id.* The Constitution requires only that when Ms. Littler signed the

11

Membership Card, she was aware of her right not to join the union and she was aware that signing the card would require her to pay union dues and be bound by the Membership Card's terms. *See id.* at *10. No reasonable jury could conclude that Ms. Littler lacked awareness of these facts.

In the wake of *Janus*, every district court to have examined the issue has held that "employees who voluntarily chose to join a union are bound by the terms of [their signed agreements] and cannot renege on their promises to pay union dues." *Id.* at *12 & n.10 (citing cases). This Court agrees.

### D. State Law Claims

Because the Court concludes that Ms. Littler validly waived her right to avoid paying full union dues by signing the Membership Card, the Court need not address whether Ms. Littler's state law claims fall within the exclusive jurisdiction of the State Employment Relations Board. All of Ms. Littler's state law claims are premised on the idea that OAPSE wrongfully seized her money. As explained above, OAPSE deducted Ms. Littler's union dues in line with the contract to which she agreed. Because there was no wrongful seizure, these state law claims fail on the merits for the same reason as Ms. Littler's § 1983 claims.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**. Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**